IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HENRY COOPER (AIS # 256656), | : | |
| Plaintiff, | : | |
| vs. | : | CIVIL ACTION 08-00321-CG-C |
| WARDEN JERRY FERRELL, et al., | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendants, Warden Jerry Ferrell and Assistant Warden Walter Myers (Docs. 13, 14) and Plaintiff's Opposition thereto. (Doc. 16). After consideration of these pleadings and the evidence presented by the parties, and for the reasons set forth below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

1. On May 5, 2008, at approximately 7:00 a.m., while incarcerated at Fountain

Correctional Facility ("Fountain"), Plaintiff cut his hand on a bread mixing machine that he was operating in the prison kitchen. (Doc. 1 at 4; Doc. 14, att. 3 at 2).

2. According to Plaintiff, he turned the machine off to beat out lumps in the bread, and the machine "came around" and "caught [his] hand," causing him to need stitches. (Doc. 1 at 4).

3. Plaintiff was taken to the prison health unit where he was treated for a two-inch laceration on his right hand. (Doc. 14, att. 3 at 2).

4. The wound was cleaned with betadine and a dressing applied. (Id.). Although the record is unclear on this point, the Court accepts Plaintiff's allegation that he later received stitches. (Id.).

5. On June 6, 2008, Plaintiff filed the present § 1983 action against Defendants, Warden Jerry Ferrell and Assistant Warden Walter Myers, alleging that Defendants violated his Eighth Amendment rights by failing to protect him from injury from the malfunctioning bread mixing machine and by failing to train him on the proper use of the machine. (Doc. 1 at 4-5).

6. Plaintiff further alleges medical malpractice on the part of the prison medical staff in treating his hand. (Id.).

7. Plaintiff seeks nominal and compensatory damages. (Id. at 7).

8. In their Answers and Special Reports filed on June 22, 2009, Defendants deny that they violated Plaintiff's constitutional rights and assert, *inter alia*, the defenses of

absolute and qualified immunity.[1] (Docs. 13, 14).

9. On July 8, 2009, the Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment. (Doc. 15).

10. On July 28, 2009, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment, reasserting his claims against Defendants. (Doc. 16).

Defendants' motion and Plaintiff's response thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.

---

[1] In this action, Plaintiff seeks to sue Defendants in their official and individual capacities. As discussed in the Court's Order of July 28, 2009 (Doc. 17), Defendants, as state officials, are entitled to absolute immunity from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Until recently, the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct. While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case. Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

3

2. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c).

3. All of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

4. However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 325-27.

5. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v.

4

Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## III. DISCUSSION

1. As discussed above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of a kitchen mishap that occurred while he was incarcerated at Fountain Correctional Facility. (Doc. 1).

2. According to Plaintiff, on May 5, 2008, he was operating a bread mixing machine in the prison kitchen and had turned the machine off to beat out lumps in the dough when the machine "came around" and "caught [his] hand," causing a two-inch laceration. (Doc. 1 at 4; Doc. 14, att. 3 at 2).

3. Plaintiff alleges that Defendants Ferrell and Myers violated his Eighth Amendment rights by failing to protect him from the malfunctioning bread mixing machine and by failing to train him on the safe operation of the machine. (Doc. 1 at 5).

4. Plaintiff further alleges that the prison's "medical staff" failed to provide proper medical care for his wound after he was injured. (Id. at 4).

5. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

6. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

7. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting "'deliberate indifference to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994).

8. In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

9. In order to prevail on his Eighth Amendment claim, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981), (2) the defendant's 'deliberate indifference' to that condition, Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v.

6

Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

10. In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

11. The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca, 995 F.2d at 1535.

12. This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

13. The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

14. The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).

15. This component "follows from the principle that 'only the unnecessary and

wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

16. In prison condition cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted).

17. In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.

18. The court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id. at 839-40.

19. There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." Farmer, 511 U.S. at 838.

20. It is not enough that a plaintiff proves that the defendant should have known of the risk; conscious awareness is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

21. "[A]n officials's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838.

22. "'Whether a prison official had the requisite knowledge of a substantial risk is

a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" Hale v. Talapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting Farmer, 511 U.S. at 842).

23. "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Id. (quoting Farmer, 511 U.S. at 842).

24. Moreover, "'deliberate indifference" entails more than mere negligence.'" Farrow v. West , 320 F.3d 1235, 1245 (11th Cir. 2003).

> In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Id.

25. Indeed, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer, 511 U.S. at 844-45 (citations omitted).

26. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id.

27. Having set forth the general legal principles relevant to Plaintiff's claims, the

Court now turns to the application of those legal principles to the facts before the Court.

    A. <u>Medical Care Claim</u>.

    28. In his Complaint, Plaintiff alleges that, after he was injured while using the bread mixing machine, he received inadequate medical care from the prison medical staff.

    29. Specifically, Plaintiff states: "the medical staff committed medical malpractice by failing to x-ray my crushed bursted open hand. I contend that the medical staff even failed to properly stitch my hand up all the way." (Doc. 1 at 4).

    30. Notwithstanding Plaintiff's allegations against the prison medical staff, he makes no allegations whatsoever against either Defendant Ferrell or Defendant Myers related to this claim.

    31. "[S]ection 1983 'requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation.'" <u>LaMarca</u>, 995 F.2d at 1538 (citations and internal quotation marks omitted).

    32. Because there is no evidence, nor even an allegation, of a causal link between these Defendants and Plaintiff's Eighth Amendment medical care claim, the claim fails as a matter of law.

    B. <u>Failure to Protect/Failure to Train</u>.

    33. Next, Plaintiff asserts an Eighth Amendment claim against Defendants Ferrell and Myers for failing to protect him from the hazards associated with the malfunctioning bread mixing machine and for failing to train him on the proper use of the machine. For

each of the reasons discussed below, this claim fails as a matter of law.

        1. Respondeat Superior Liability.

        34. In his Complaint, Plaintiff bases his failure to protect/failure to train claim against Defendant Ferrell[2] solely on the theory of *respondeat superior*, that is, that Warden Ferrell, as a supervisor, is responsible for the prison staff's failure to train and failure to protect Plaintiff from the malfunctioning machine.

        35. In order to state a claim upon which relief can be granted in a § 1983 action, Plaintiff must establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted).

        36. Liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*. See Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

        37.    "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of

---

[2] In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff maintains that Defendant Myers was personally responsible for assigning him to kitchen duty and that Defendant Myers personally made periodic inspections of the kitchen and knew or should have known of the condition of the appliances. (Doc. 16 at 3-4). For purposes of this motion for summary judgment, the Court assumes that Plaintiff's failure to train/failure to protect claim against Defendant Myers is based on Myers' personal involvement with this alleged deprivation, as opposed to being based on mere supervisory liability as is the case with Defendant Ferrell.

> their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *4 (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability). Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *5; Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *5 (quoting Braddy v. Fla. Dept. of Labor & Employment, 133 F.3d 797, 802 (11th Cir.1998)); Brown, 906 F.2d at 671. Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *5 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)); Hartley, 193 F.3d at 1263; see also Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at ----, 2003 WL 1481583, at *4 (internal quotation marks and citation omitted).

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

38. In instances in which supervisory liability is based on a supervisor's custom or policy, a plaintiff must show that the custom or policy was "the 'moving force [behind] the constitutional violation.'" Pinkney v. Davis, 952 F. Supp. 1561, 1569 (M.D. Ala.

12

1997) (citations omitted).

39. "[I]t is clear that not only must there be some degree of 'fault' on the part of [defendant] in establishing the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." Id. (citations omitted).

40. Assuming, *arguendo*, that the malfunctioning bread mixing machine created a constitutionally infirm prison condition, Plaintiff has failed to establish, or even allege, any personal involvement, custom, or policy of Warden Ferrell which caused the associated constitutional violation.

41. Thus, because Plaintiff's failure to protect/failure to train claim against Defendant Ferrell is based solely on a theory of *respondeat superior* liability, it fails as a matter of law.

    2. No Eighth Amendment Violation.

42. In addition to the foregoing, Plaintiff's claim against Defendant Ferrell and Defendant Myers for failure to protect and failure to train fails as a matter of law for lack of evidence of the essential elements of an Eighth Amendment claim.

43. Plaintiff maintains in this action that he should have been protected from the malfunctioning bread mixing machine and should not have had to operate it without sufficient training.[3]

---

[3] Although Defendants have submitted affidavits attesting that Plaintiff was given training by the institutional stewards on his assigned kitchen duties (Doc. 14, att. 1; Doc. 14, att.

44. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety." Farmer, 511 U.S. at 844.

45. "[A] prison custodian is not the guarantor of a prisoner's safety." Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005). Purcell, 400 F.3d at 1321 (citations omitted).

46. Considering all of Plaintiff's evidence, the Court is unconvinced that being required to operate a bread mixing machine without training, even a malfunctioning machine with a propensity to resume spinning after being switched off, amounts to the infliction of "unnecessary pain or suffering," LaMarca, 995 F.2d at 1535, or exposes an inmate to "a substantial risk of serious harm." Farmer, 511 U.S. at 834.

47. While the Court agrees that working with a piece of kitchen equipment that is in sub-optimal working order is not an ideal situation, the evidence in this case does not support a finding that the risk of harm associated with this particular piece of equipment rises to the level of a constitutional violation.

48. Thus, Plaintiff has failed to establish the objective element of his Eighth Amendment claim.

49. Assuming, however, that Plaintiff had established the objective element of his

---

2), for purposes of this motion for summary judgment, the Court accepts Plaintiff's allegation that he did not receive training on the proper operation of the malfunctioning bread mixing machine. Plaintiff does acknowledge, however, that he was aware, prior to the accident, that the bread mixing machine had a tendency to resume spinning even while switched off. (Doc. 16 at 2).

Eighth Amendment claim, in order to satisfy the subjective element of his Eighth Amendment claim, Plaintiff must show that Defendants were deliberately indifferent to the risk of serious harm to him.

50. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly" declined to take action to prevent that harm. LaMarca, 995 F.2d at 1537.

51. In his Response in Opposition to Defendants' Motion for Summary Judgment, Plaintiff states: "Plaintiff submits that the defendants' negligence in failing to have the mixing machine fixed amounts to deliberate indifference because plaintiff has brought to the attention of the stewards and the defendants that the mixer needed fixing on several occasions prior to the incident."  (Doc. 16 at 2).

52. Contrary to Plaintiff's argument, Defendants' alleged negligence in failing to have the mixing machine fixed does not "amount[] to deliberate indifference."  See Farrow, 320 F.3d at 1245 ("'deliberate indifference' entails more than mere negligence.'").

53. Moreover, assuming that Defendants were aware of the mixer's propensity to resume spinning after being turned off, there is no evidence that Defendants were aware of a substantial risk of serious harm posed by that fact.  LaMarca, 995 F.2d at 1537; Hale, 50 F.3d at 1583.

54. Although Plaintiff undisputedly received a two-inch laceration as a result of operating the malfunctioning bread mixing machine, there is no evidence of any prior

15

accidents in which an inmate was injured while operating the machine, nor is there any evidence to suggest that a substantial risk of serious harm was obvious.

55. As discussed above, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838.

56. Defendants must have been "consciously aware of" of the significant risk and knowingly or recklessly disregarded it. Cottrell, 85 F.3d at 1491.

57. In this case, Plaintiff has failed to establish the subjective element of his Eighth Amendment failure to train/failure to protect claim against Defendant Ferrell and Myers. Therefore, the claim fails as a matter of law for this reason as well.

## IV. CONCLUSION

58. Based on the foregoing, the Court concludes that Defendants, Warden Jerry Ferrell and Assistant Warden Walter Myers, are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

59. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

60. The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 8th day of January, 2010.

s/WILLIAM E. CASSADY　　　　　
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).